IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KEYAIRRA MILLIGAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 2:22-cv-02424-JTF-atc |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2255, DENYING A CERTIFICATE OF APPEALABILITY, CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

On June 29, 2022, Petitioner Keyairra Milligan, Bureau of Prisons register number 31803-076, an inmate at Aliceville FCI, filed her *pro se* Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) The Government responded on September 1, 2022. (ECF No. 7 (sealed).) On August 8, 2023, Milligan sought authorization from the Sixth Circuit to file a second or successive habeas petition. (ECF No. 8.) The Sixth Circuit transferred that filing to this Court with instructions to construe it as a motion to amend the first petition. (*Id.* at 2.) On April 15, 2024, the Court granted the motion to amend, and directed Milligan to file her amended petition within 28 days of that Order's entry. (ECF No. 12.) Milligan failed to do so. The Court entered an order to show cause on September 27, 2024 extending her deadline to file the amended petition by 14 days. (ECF No. 13.) Again, Milligan did not file her amended petition. The Court construes Milligan's June 29, 2022 petition and August 8, 2023 filing as a single, unified habeas petition. For the reasons set forth below, Milligan's petition is **DENIED**.

1

## I. BACKGROUND

On December 12, 2019, a federal grand jury returned a 26-count superseding indictment against Milligan and six codefendants. (Criminal Case No. 2:19-cr-20274-JTF-5 ("Cr.") ECF No. 74 (sealed).) Milligan was charged with four counts of robbery affecting commerce in violation of 18 U.S.C. § 1951 ("Hobbs Act robbery"), four counts of using, carrying, and brandishing of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), and one count of providing false information in the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6). (*Id.*)

Initially, attorney John Holton was appointed to represent Milligan on December 16, 2019. (Cr. ECF No. 86.) Milligan retained attorney Charles Wesley Summers on November 6, 2020. (Cr. ECF No. 199.) Thereafter, the Court granted several continuances to allow Milligan's attorney ample time to discuss issues pertaining to her case. (Cr. ECF Nos. 198, 228, 229, & 240.) Finally, on March 11, 2021, Milligan pleaded guilty to two counts of Hobbs Act robbery, two counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence, and one count of providing false information in the acquisition of a firearm. (Cr. ECF Nos. 252 & 254.) Pursuant to a written plea agreement, the Government agreed to recommend that Milligan be sentenced at the low-end of the Sentencing Guidelines range and receive full credit for acceptance of responsibility. (Cr. ECF No. 254, 2.) The Government also agreed to dismiss the remaining counts at the conclusion of the sentencing hearing. (*Id.*) In exchange, Milligan waived "her right to appeal any sentence imposed by the Court" as well as her right to "challenge any conviction or sentence imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255." (*Id.* at

3.) Milligan reserved her right to bring claims of prosecutorial misconduct or ineffective assistance of counsel. (*Id.* at 4.)

During the plea colloquy, Milligan affirmed that she had plenty of time to discuss the proceedings with her attorney, and that she understood the hearing's purpose. (Cr. ECF No. 394, 12.) She also confirmed that she was entering her guilty plea voluntarily, that she thoroughly discussed the plea agreement with her attorney, and that she understood it. (*Id.* at 40.)

Milligan appeared before the Court for sentencing on August 31, 2021. (Cr. ECF No. 314.) Initially, Milligan faced a Sentencing Guidelines recommendation of 206 months confinement with the Bureau of Prisons. (Cr. ECF No. 283-2.) However, the Court departed from the Sentencing Guidelines and imposed a 96-month custodial sentence. (Cr. ECF No. 315.)

Milligan filed her first habeas petition on June 29, 2022. (ECF No. 1.) There, she argues that her counsel was ineffective. (*Id.* at 4.) Specifically, Milligan contends that she did not understand the nature of the counts she pleaded guilty to, that her attorney "never explained what [she] was pleading guilty to," that she was "not informed of [her] right to argue [her] minimum participation in the crimes committed," and that she was "over-sentenced." (*Id.* at 4.)

Milligan raises what appear to be two additional grounds in her August 8, 2023 filing which the Court construes as part and parcel of her habeas petition. (ECF No. 8.) First, she challenges "the sufficiency of the charging document against [her]." (*Id.* at 6.) Second, she argues that she is actually innocent of her two § 924(c) convictions, pursuant to the Supreme Court's ruling in *United States v. Taylor*, 596 U.S. 845 (2022). (*Id.* at 7-8.) Milligan does not provide much information about what the first claim pertains to. Based on her accompanying explanation that this claim relies on "newly discovered evidence," namely, "new case laws," the Court concludes that the first ground is in fact the same as the second. (*Id.* at 6.)

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). Petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## III. ANALYSIS

Milligan argues that she is entitled to relief under 28 U.S.C. § 2255 because her counsel was ineffective, and because she is innocent of her § 924(c) convictions based on the Supreme Court's decision in *Taylor*, 596 U.S. 845. The Court considers each argument below and finds that neither has merit.

### A. Ineffective Assistance of Counsel

The Sixth Amendment right to effective counsel extends to the plea-bargaining process and is governed by the two-prong *Strickland* test. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *Missouri v. Frye*, 566 U.S. 133, 140-41 (2012)); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). To establish constitutionally ineffective assistance in the plea-bargaining process, the movant must show not only that counsel was deficient, but that the outcome of the plea process would have been

4

different with competent advice. *Id.* There is a strong presumption that counsel's performance falls within the "wide range of professional assistance" and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689, 690; *see also United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995) ("We presume from the outset that a lawyer is competent, and therefore, the burden rests on the accused to demonstrate a constitutional violation." (citation omitted)). The petitioner must prove his allegation that his lawyer was constitutionally ineffective by a preponderance of the evidence. *Pough*, 442 F.3d at 964 (citing *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003)). A court evaluating an ineffective assistance claim does not need to address the *Strickland* components in order "or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." *Lee v. United States*, 582 U.S. 357, 368–69 (2017) (internal quotation marks and citations omitted). "Where [] a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To be effective, counsel must inform his client of available options and "explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Smith v. United States*, 348 F. 3d 545, 552-53 (6th Cir. 2003) (citation omitted). A lawyer's performance would be deficient if "counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence." *Pough*, 442 F.3d at 966 (quoting United States v. Cieslowski, 410 F.3d 353, 358–59 (7th Cir. 2005)).

Milligan contends that her counsel, Charles Summers, performed deficiently because he failed to properly inform her of the nature of the counts she pleaded guilty to, that she was "not informed of [her] right to argue [her] minimum participation in the crimes committed," and that she was "over-sentenced." (ECF No. 1, 4.)

CJA panel member John Holton originally represented Milligan. (ECF No. 7, 15.) He represented her when she sought a change of plea hearing. (Cr. ECF No. 192.) She retained Summers on November 6, 2020, before the change of plea hearing. (Cr. ECF No. 199.) The Government included both attorneys' affidavits in their response. (ECF No. 7.) Summers acknowledges that when he came onto the case, Milligan did not understand what the upcoming plea hearing entailed, or the "gravity and severity of the charges for which she would be asked to accept responsibility." (*Id.* at 11.) He notes that she became very emotional when he explained her sentencing exposure. (*Id.*) Summers then met with her four more times to discuss the charges in the indictment and ensure that she understood the charges she faced, and the options she had going forward. (*Id.*) Summers explained to Milligan that the indictment charged her with four counts of robbery, four counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence, and one count of providing false information in the acquisition of a firearm. (*Id.*) He also advised that if she were to plead as charged or was convicted of all counts at trial, she ostensibly faced a minimum of approximately 32 years imprisonment. (*Id.* at 12.) Ultimately, counsel's negotiations with the government resulted in an agreement to dismiss four counts of the indictment. (*Id.*)

The Government points out that the Court conducted a thorough plea colloquy and found that Milligan change of plea was knowing and voluntary. (Cr. ECF No. 394, 12 & 40.) The Court asked Milligan if she understood what the Government would have had to prove had the case gone to

6

trial and whether she had any questions about any of what had been covered during the colloquy, to which she replied "No, sir." (*Id.* at 23-29.)

The Court takes Summers at his word given Milligan's apparent lack of opposition to the contents of his affidavit. Summers makes clear that he thoroughly explained to Milligan the nature and severity of the charges she faced, her sentencing exposure, the plea process, and her sentencing options over the course of five meetings. (ECF No. 7, 11-12.) Even if this were insufficient, the Court's thorough plea colloquy which covered all of the same issues "cured any misunderstanding that [she] may have had about the consequences of her guilty plea." *Ramos v. Rogers*, 170 F.3d 560 (6th Cir. 1999). At the time of the change of plea, Milligan clearly affirmed her understanding of the terms of the plea agreement. (Cr. ECF No. 394, 23-29.) The Court believed then, and continues to believe now, that Milligan understood not only the terms of the plea agreement, but also the impact of her decision to plead guilty. Summers's and the Court's comprehensive advisement of Milligan's rights and the consequences of her change of plea belies much of her ineffective assistance of counsel argument.

All that remains of Milligan's first argument is her contention that she was "over-sentenced." (ECF No. 1, 4.) It is unclear how this connects to Summers's allegedly deficient performance. Based on her decision to set this argument off from the previous sentence, the Court takes this to be a standalone argument. Such an argument is barred by the plain terms of the plea agreement; Milligan waived the right to raise any collateral attack to her sentence, save for claims relating to prosecutorial misconduct or ineffective assistance of counsel. (Cr. ECF No. 254, 2.) A claim pertaining to the Court's own sentencing decision does not fit within either of the two narrow avenues of collateral attack that Milligan reserved the right to bring.

7

The Court does not find that Milligan has made a sufficient showing that her counsel performed deficiently, so it need not and does not address whether prejudice resulted. *See Strickland*, 466 U.S. at 697.

### B. *Taylor*'s Effect on § 924(c) Convictions

Section 924(c) prohibits the use or carrying of a firearm "during and in relation to," or possessing a firearm "in furtherance of," any federal "crime of violence or drug trafficking crime." § 924(c)(1)(A). A federal felony qualifies as a "crime of violence" if it involves either (A) the attempted, threatened, or actual use of physical force, or (B) a substantial risk of physical force against a person or their property. § 924(c)(3)(A), (B). These provisions are respectively known as the "elements" and "residual" clauses of § 924(c). *Taylor*, 596 U.S. at 848. The analysis below proceeds only under the elements clause because the Supreme Court has ruled that the residual clause is unconstitutionally vague. *See United States v. Davis*, 588 U.S. 445, 448 (2019).

Milligan's argument here proceeds from *Taylor*, where the Supreme Court held that *attempted* Hobbs Act robbery is not a crime of violence under the elements clause in § 924(c)(3). 596 U.S. at 860. She does not explain how this decision impacts her § 924(c) convictions predicated on her two convictions for aiding and abetting Hobbs Act robbery. However, the Court has addressed this same argument in a sufficient number of cases to understand what Milligan has in mind.

At issue is whether aiding and abetting Hobbs Act Robbery constitutes a crime of violence under § 924(c)(3)'s elements clause. The Sixth Circuit has spoken on "aiding and abetting" predicate offenses before and after *Taylor*. With respect to "aiding and abetting," the Sixth Circuit held that "[t]here is no distinction between aiding and abetting the commission of a crime and committing the principal offense." *United States v. Richardson*, 948 F.3d 733, 741 (6th Cir. 2020); *see also Edmond v. United States*, No. 20-1929, 2022 WL 3585638, at *6 (6th Cir. Aug. 22, 2022),

8

*cert. denied*, 143 S. Ct. 816 (2023) (same). Furthermore, the Sixth Circuit has held that the principal offense of Hobbs Act robbery is a crime of violence under the elements clause. *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017). These cases demonstrate that a conviction for aiding and abetting Hobbs Act robbery is no different from the principal offense of Hobbs Act robbery as far as § 924(c) is concerned. Because the principal offense of Hobbs Act robbery is a crime of violence under the elements clause, so too is aiding and abetting Hobbs Act robbery.

Even after *Taylor*, Milligan's two convictions for aiding and abetting Hobbs Act robbery constitute predicate offenses for her two § 924(c) convictions. She is therefore not entitled to relief on this ground.

### C.  Appeal Issues

28 U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). No § 2255 petitioner may appeal without this certificate.

A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).

> Where a district court has rejected a constitutional claim on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists

9

of reason would find it debatable whether the district court was correct in its procedural ruling. . . .

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020). "To put it simply, a claim does not merit a certificate unless every independent reason to deny the claim is reasonably debatable." *Id.*; *see also id.* ("Again, a certificate is improper if any outcome-determinative issue is not reasonably debatable.").

There can be no question that the issues raised in Milligan's § 2255 Petition are meritless for the reasons previously stated. The Court therefore **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file her motion to proceed in forma pauperis in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court also determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is **DENIED.**

## IV. CONCLUSION

Consistent with the foregoing, Milligan's § 2255 Petition is **DENIED** as to all grounds set forth therein. The Court also **DENIES** a certificate of appealability and **CERTIFIES** that an appeal would not be taken in good faith.

**IT IS SO ORDERED**, this 3rd day of December, 2024.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
United States District Judge
